# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| JAKORIUS PETERSON, | § | |
| (TDCJ-CID #1873221) | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3194 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner, Jakorius Peterson, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a conviction in the 232nd Judicial District Court of Harris County, Texas. Respondent filed a motion for summary judgment, (Docket Entry No. 10), and copies of the state court record. Peterson has filed his response. (Docket Entry No. 11). After consideration of the motion and response, the record, and applicable authorities, the court grants respondent's motion, for the reasons stated below.

## I.    Background

Peterson pleaded guilty to the felony offense of aggravated robbery with a deadly weapon. (Cause Number 138570801010). On July 26, 2013, the court sentenced Peterson to twenty years imprisonment.

Peterson filed an application for state habeas corpus relief on March 13, 2014, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without

a hearing on August 20, 2014.  (Docket Entry No. 9-1, *Ex parte Peterson,* Application No. 81,899-01, p. 1).

On November 6, 2014, this court received Peterson's federal petition.  Peterson contends that his conviction is void for the following reasons:

(1)     Trial counsel, Tanya Broholm, coerced him into pleading guilty;

(2)     Judge Keel failed to enter a deadly-weapon finding; and,

(3)     The evidence was insufficient to show that he possessed a firearm.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-7).

## II.     The Standard of Review

This court reviews Peterson's petition for writ of habeas corpus under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254; *Woods v. Cockrell,* 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson,* 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy,* 521 U.S. 320 (1997).

Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an adjudication on the merits.  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural."  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).  A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).  A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached

by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman,* 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke,* 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia,* 454 F.3d at 444-45 (citing *Summers v. Dretke,* 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that,

in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Peterson is proceeding *pro se*. A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Peterson's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III. The Claim as to the Voluntariness of the Guilty Plea

Peterson claims that his guilty plea was involuntary because counsel, Broholm, gave him erroneous advice. A federal court upholds a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent. *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.), *cert. denied,* 474 U.S. 838 (1985). A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt. *Henderson v. Morgan,* 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley,* 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied,* 503 U.S. 988 (1992). If the record shows that the defendant "understood the charge and its consequences," this court will uphold a

guilty plea as voluntary even if the trial judge failed to explain the offense. *Davis v. Butler,* 825 F.2d 892, 893 (5th Cir. 1987).

The record shows that on July 26, 2013 Peterson appeared in open court and entered a plea of guilty. (Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 64-69). The court admonished Peterson, in writing, as to the nature of the offense charged - aggravated robbery with a deadly weapon - and the punishment range. (*Id.* at 66). The document contained the following representations:

1. I am mentally competent. I understand the charge against me, and I understand the nature of these proceedings. I am entering my guilty plea freely and voluntarily.

2. I have read and I understand the admonishments set out above. I understand the consequences of my plea.

3. I waive the right to have a court reporter record my plea.

4. I do not want the probation department to prepare a pre-sentence investigation report, and I waive my right to have such a report prepared in this case.

5. I understand that the Court will certify that: I have no right to appeal.

6. I have freely and voluntarily executed this document in open court with the advice of my attorney.

7. I am a citizen of the United States.

8. I read and write English. I have read and I understand this document, the Waiver of Constitutional Rights, Agreement to Stipulate, Judicial Confession and Plea of Guilty filed in this case.

9. My educational level is high school.

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 67-69).

In his representations, Peterson acknowledged that he was entering a plea, and that the punishment range was five to ninety-nine years; that he fully understood the consequences of the plea and had consulted with counsel; and that he freely and voluntarily entered his plea in open court, with his counsel's approval.  Peterson's signature indicates that he understood the nature of the charge against him and the consequences of his plea.

Peterson also signed a document entitled "WAIVER OF CONSTITUTIONAL RIGHTS, AGREEMENT TO STIPULATE, AND JUDICIAL CONFESSION."  By his signature, Peterson stated that he waived his constitutional right to a trial by jury; to the appearance, confrontation, and cross-examination of witnesses; and his right against self-incrimination. (Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 64-65).

Peterson attested to the truth of the allegations in the indictment as follows:

> The charges against me allege that in Harris County, Texas, JAKORIUS PETERSON, hereafter styled the Defendant, on or about APRIL 28, 2013, did then and there unlawfully, while in the course of committing theft of property owned by ANDREA HERNANDEZ, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY THREATEN ANDREA HERNANDEZ, and the Defendant did then and there use and exhibit a deadly weapon, namely, FIREARM.
>
> AGAINST THE PEACE AND DIGNITY OF THE STATE.
> I understand the above allegations and I confess that they are true and that the acts alleged above were committed on April 28, 2013.

(*Id.* at 64-65).

Peterson, his attorney, and the State executed this document.  Peterson's retained defense attorney signed the plea of guilty and a statement that she had fully discussed the plea and its

consequences with Peterson and believed that Peterson had entered his plea knowingly and voluntarily. (*Id.* at 65).

By signing each of the documents and pleading guilty, Peterson made declarations entitled to significant weight.  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)(quoting *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977)).  The trial court determined that Peterson had entered his plea knowingly and voluntarily after discussing the case with his attorney. (Docket Entry No. 11-1, State Court Record, p. 11).  The documents that make up the record are entitled to a presumption of regularity under 28 U.S.C. § 2254(e), and this court accords evidentiary weight to these instruments.  *Carter v. Collins,* 918 F.2d 1198, 1202 n.4 (5th Cir. 1990).

The state habeas court found:

> 1. The applicant, Jakorius Peterson, was charged with the first degree felony offense of aggravated robbery committed on January 14, 2013, in cause number 1374001 out of the 232nd District Court of Harris County, Texas (the companion case).
>
> 2. The Court finds, based on official trial court records, that the applicant was released on a $30,000 bond on March 28, 2013, in the companion case.
>
> 3. While on bond, the applicant was arrested for the felony offense of aggravated robbery alleged to have been committed on April 28, 2013; and charges were filed as cause number 1385708 in the 232nd District Court of Harris County, Texas (the primary case).
>
> 4. On July 26, 2013, the applicant pled guilty in the primary case and the companion case; and the trial court assessed punishment in both cases, in accordance with the agreed plea bargain, at confinement for twenty (20) years in the Texas Department of Criminal Justice - Institutional Division.

5. No direct appeal was taken in either case.

6. The applicant was represented by counsel, Tanya Broholm.

7. The Court finds the affidavit filed by Tanya Broholm ("Broholm") in the instant writ proceeding to be credible and that the facts asserted therein are true.

8. According to the credible affidavit of Broholm, she had a meeting with the applicant in the jail on March 4, 2013, prior to charges being filed in the primary case, and was retained to represent him in the companion case.

9. Broholm believed that the applicant was a good candidate for community supervision based on his personable and friendly demeanor, lack of criminal history, and the fact that he had a young son in kindergarten; and she emailed the prosecutor requesting this.

10. Broholm met with the applicant's family at their apartment on nine (9) occasions to discuss the applicant's case.

11. When Broholm would discuss possible defenses in the companion case with the applicant, "[h]e would laugh and say, 'I was dead to the wrong. They have me on video, and I confessed. I didn't do the right thing. I definitely don't want a trial because they could give me life'".

12. On March 27, 2013, Broholm reviewed the file in the applicant's case; Broholm requested and received a copy of the offense report and the applicant's taped confession; Broholm scheduled a meeting to review the surveillance of the robbery; and the applicant was offered a plea bargain of fifteen (15) years by the State.

13. Broholm learned from her review of the evidence in the State's possession that the surveillance video showed the applicant holding three people hostage on their knees at gunpoint for over ten minutes and the workers were crying and shaking as he held a gun to their heads; that the applicant was arrested shortly after leaving the store; and that the applicant provided a full confession of the incident captured on video.

14. After the applicant posted bond, Broholm continued to work on his case, and met with the applicant at his apartment or drove him to

his sister's place of employment to discuss the case on numerous occasions.

15. On April 26, 2013, the applicant's case was reset again; because the offer was still fifteen (15) years and the applicant had told Broholm that "he did not want to sign for anything until his son graduated kindergarten."

16. At that same court setting, Broholm complimented the applicant on his "fancy watch," and the applicant "giggled and said 'yeah and don't worry I'm gonna have some money for you this weekend'".

17. Despite the fact that Broholm assured the applicant that his sister was making payments to her, Broholm received a call that weekend from the applicant's sister informing her that the applicant had been arrested and charged with another aggravated robbery committed on April 28, 2013.

18. On May 23, 2013, the State offered the applicant forty (40) years.

19. Through continued plea negotiations, Broholm was able to get the State's offer down to confinement for twenty (20) years.

20. Broholm advised the applicant of his options in dealing with his case; the applicant was "desperate not to go to trial," and Broholm advised the applicant that even though "she could not guarantee what a judge would do" and the full range of punishment, up to and including life, would be available, her recommendation was still to plead guilty without an agreed recommendation for the trial court to assess punishment following a pre-sentencing investigation (PSI). *Broholms Affidavit* at 3.

21. The applicant told Broholm that because he could not take the risk of either going to trial or going in front of the judge; and on July 26, 2013, he accepted the State's offer of twenty (20) years.

22. The Court finds, based on a review of the official trial court records and Broholm's credible affidavit, that prior to the applicant entering his pleas in the primary and companion cases, Broholm went over all of the plea paperwork with him, which clearly provided the State's recommendation and admonished the applicant to insure his plea was voluntary and the applicant understood the plea agreement.

23. On her way to taking the plea paperwork to the clerk, Broholm advised the applicant that the plea is not over until he pleads in front of the judge, and that he could change his mind at the last second without any upset from her.

24. According to the credible affidavit of Broholm, the applicant laughed at this advice and told  her he was sure that he wanted to go forward with the plea; because with a video of his holding people at gunpoint while they were on their knees, a full confession from him, and picking up the primary case while on bond, he believed that twenty (20) years was a "miracle."

25. The Court finds, based on official trial court records, that the applicant was properly admonished prior to entering a plea of guilty in the primary case.

26. The Court finds that the applicant's plea of guilty was knowingly and voluntarily entered.

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 48-53)(citations omitted).

The state habeas court concluded:

9. A plea of guilty or nolo contendere should not be accepted unless it appears that the plea is Voluntary. TEX. CODE CRIM. PROC. ANN. art. 26.13(b).

10. In determining the voluntariness of a plea, the entire record is considered. *Williams v. State,* 522 S.W.2d 483, 485 (Tex. Crim. App. 1975).

11. A presumption of voluntariness was created when the applicant was properly admonished by the trial court prior to entering his plea. *Mitschke v. State,* 129 S.W.3d 130, 136 (Tex. Crim. App. 2004).

12. Because the applicant fails to overcome the presumption of regularity created in the trial court records, he fails to demonstrate that his plea was involuntary. *Fuentes v. State,* 688 S.W.2d 542, 544 (Tex. Crim. App. 1985).

13. Based on the totality of the circumstances in the primary case, the applicant's plea was knowingly and voluntarily made. *Griffin v. State,* 703 S.W.2d 193, 196 (Tex. Crim. App. 1986).

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 56-57).

The Texas Court of Criminal Appeals also denied relief on Peterson's claim for postconviction relief. On habeas review, the federal courts are bound by the credibility choices made by the state court. *Hogue v. Johnson,* 131 F.3d 466, 505 (5th Cir. 1997). As a federal court in a habeas proceeding, this court is required to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported by the record. *Loyd v. Smith,* 899 F.2d 1416, 1425 (5th Cir. 1990).

The state habeas court found that Peterson had entered his guilty plea freely and voluntarily. The Court of Criminal Appeals explicitly based its denial of habeas relief on this finding. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g). Peterson has not produced clear and convincing evidence to rebut these findings. The state court record fairly supports the explicit finding that Peterson's guilty plea was voluntary. The record shows that Peterson voluntarily entered a guilty plea after consulting with counsel. The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States. Peterson's claim for habeas relief based on the involuntariness of his guilty plea lacks merit, and relief cannot be granted. 28 U.S.C. § 2254(d)(1).

## IV.    The Claim of Ineffective Assistance of Counsel

Peterson claims that he did not knowingly and voluntarily enter his guilty plea because he did not receive effective assistance of counsel. Peterson asserts that counsel failed to conduct an adequate pretrial investigation.

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *see Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *Machibroda v. United States,* 368 U.S. 487, 493 (1962). In *Hill v. Lockhart,* 474 U.S. 52 (1985), the Supreme Court held that the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), applies to cases involving guilty pleas. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's actions fell below an objective standard of reasonableness; and (2) the ineffective assistance of counsel prejudiced him. *Id.*; *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998). A court may resolve a claim by finding either that counsel rendered reasonably effective assistance or that there was a lack of prejudice. There is no need to reach both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson,* 120 F.3d 551, 564 (1997)(quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

In the context of a guilty plea, prejudice is present if there is reasonable probability that absent counsel's errors the defendant would not have entered a guilty plea and would have insisted on a trial. *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996); *Mangum v. Hargett,* 67 F.3d

80 (5th Cir. 1995), *cert. denied*, 516 U.S. 1133 (1996).  A reasonable probability is a probability

sufficient to undermine confidence in the outcome.  *Strickland*, 466 U.S. at 694.

In the context of an ineffective-assistance-of-counsel claim subject to AEDPA deference,

"the pivotal question is whether the state court's application of the *Strickland* standard was

unreasonable." *Richter*, 131 S. Ct. at 785. While "[s]urmounting *Strickland*'s high bar is never an

easy task," "establishing that a state court's application of *Strickland* was unreasonable under

§ 2254(d) is all the more difficult." *Id.* at 788 (citations omitted).

> [A] habeas court must determine what arguments or theories
> supported or, as here, could have supported, the state court's decision;
> and then it must ask whether it is possible fairminded jurists could
> disagree that those arguments or theories are inconsistent with the
> holding in a prior decision of [the Supreme] Court.

*Id.* at 786. Put simply, both the *Strickland* standard and the AEDPA standard are "highly deferential"

and "when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted).

Because Peterson pleaded guilty to the offense, the relevant inquiry is whether counsel's

performance interfered with Peterson's ability to understand the nature of the charges against him

and the consequences of his plea.  Once a guilty plea has been entered, nonjurisdictional defects in

the proceedings against the defendant are waived, including all claims of ineffective assistance of

counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea.

*Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir.), *cert. denied sub nom. Smith v. McKaskle*, 466 U.S.

906 (1984).

Peterson stated, in court, in writing that he understood the trial court's admonishments; and

fully understood the consequences of his guilty plea; and freely and voluntarily pleaded guilty.

Peterson also stated, in court, in writing that he had discussed the contents of the court's written

admonishments with his attorney and understood them, and he was satisfied with the representation trial counsel had provided.  These documents are entitled to a presumption of regularity under 28 U.S.C. § 2254(e), and this court accords evidentiary weight to these instruments.  *Carter v. Collins,* 918 F.2d 1198, 1202 n.4 (5th Cir. 1990).

From the record before it, the court has found that counsel's performance did not interfere with Peterson's ability to understand the nature of the charges against him and the consequences of his plea.  Once a guilty plea has been entered, nonjurisdictional defects in the proceedings against the defendant are waived, including all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea.  *Smith,* 711 F.2d at 682.

Peterson's claim that his counsel failed to conduct an adequate investigation of the facts does not meet the criteria necessary to overcome waiver or provide a basis for habeas relief on the merits. Peterson is not entitled to habeas relief on this claim.  Alternatively, the court finds that this claim lacks merit.

In her affidavit to the state habeas court, Broholm testified as follows:

> Defense counsel, Tanya Broholm, files this affidavit in response to the application for Writ of Habeas Corpus and in support thereof would show unto this Honorable Court the following:
> On March 4, 2013 I was retained by Mr. Peterson and I had a meeting with him in the jail. On March 8, 2013, I filed a motion to substitute with the court. I reviewed the file immediately thereafter, and received the offense reports etc. I emailed the prosecutor on March 19th and requested probation and that the state give him a second chance. (Exhibit R-1). The first setting was on March 27, 2013 in the 232nd district court. After meeting with Mr. Peterson in the jail, I found him to be very personable and friendly. He had no priors and from his personality, it seemed to me that he was new to the system. He was 22 years old with a small son in kindergarten. I immediately felt such compassion for him and wanted to make sure we fought extremely hard on his case. I would continue to meet with him and

fight for him. I met with his family at their apartment since they do not have transportation on March 8, March 15, March 22, April 12, May 3, May 17, May 30 July 1, and July 18th, 2013 to discuss this case and what direction we should take with it. We spoke about whether we could use defenses such as identity, ownership, duress, that it was not a robbery because the people were a willing participant etc.. He would laugh and say, "I was dead to the wrong. They have me on video, and I confessed. I didn't do the right thing. I definitely don't want a trial because they could give me life."

I wanted the court to give him an opportunity to change and not be corrupted by the men in the TDC system. I felt he had been influenced by a bad crowd. The co-defendant had many priors including possession of a controlled substance, assault, theft, possession of marijuana and reckless driving. The co-defendant was not in the store during the aggravated robbery, only Mr. Peterson. I knew he had been desperate for the money but I found that he was cooperative with this process and I felt giving him a chance would help get him on the right track.

On March 27, 2013, I again reviewed the court's file and requested and was provided the offense reports, the taped confession by the defendant and scheduled a meeting to review the surveillance. He was offered 15 years by the state.

The surveillance video showed Mr. Peterson holding 3 people hostage on their knees at gun-point for over 10 minutes. The store workers were crying and shaking as he the[sic] held the gun to their heads. He left the store and was arrested shortly thereafter. He provided a full confession of the incident which was captured on video.

He posted bond and began fighting his case with me on the outside. I would meet him at his apartment and drive him to his sister's place of employment to discuss the case on numerous occasions. On April 26, 2013, the offer was still around 15 years and we continued to fight and negotiate. We had discussed reducing it to 10, but we did not feel comfortable with that. We knew the options but he told me he did not want to sign for anything until his son graduated kindergarten. So we continued to reset the case. I clearly did not rush the case, because it did not reach a resolution until after half a year had passed.

I remember on the 26th of April as he signed the reset he had on a fancy watch which I commented that I loved on him. He giggled and said "yeah and don't worry I'm gonna have some money for you this weekend." That comment instantly haunted me. I told him I certainly appreciate payments but his sister was making them and there was no need for him to worry.[] Then that weekend I received a call from his

sister that Mr. Peterson had been arrested and charged with another aggravated robbery with a deadly weapon while on bond for an aggravated robbery with a deadly weapon. I remember my heart sinking. I could not believe it.

The prosecutor called me at 8:25am Monday morning and said "I'm calling about that guy you vouched for in your email." I felt so sad for Mr. Peterson because I knew this new charge would hurt his case.

When we came back to court on May 23, 2013, the prosecutor offered 40 years. Mr. Peterson was desperate not to go to trial. I told him there were other options like continuing to negotiate with the prosecutor or going to the judge without an agreed recommendation. We continued to fight and got the prosecutor down to 20 years. The thing that is particularly special about this case though is that I told him that I felt very strongly about his case. I said, doing a PSI and going in front of the judge is extremely risky, and at that point the full range of punishment is open to the judge, but I[sic] that I would do it. I could not guarantee what the judge would do, but I told him if I were sitting back there, I would not take the 20 years, and if my family member were back there I would tell the same.

I told him I could not guarantee what a judge would do and it could result in a life sentence, but because of his previous criminal history, age and family support and personality, I felt it would be in his best interest. I pleaded with him to do a PSI and NOT take the 20 years. He told me that he just could not take the risk of going in front of the judge or taking it to trial, so on July 26, 2013, we took the plea for 20 years. Prior to the plea, we reviewed the paperwork which is clear about the recommendation and clearly admonishes on voluntariness and understanding of what is happening and the agreement being entered into. Clearly probation was not the agreed option, because the paperwork says 20 years TDC. We went through the entire paperwork and signed it. I asked if anyone had promised him anything (besides this plea), if he was doing it voluntarily, if he understood the charge and if he understood what he was agreeing to. When I was about to take the paperwork to the clerk I advised him that it is not done until you plead in front of the judge. Even though the papers were signed, I told him that it would not make me upset if at the last second he changed his mind. He laughed and said that he was sure he wanted to do it, he knew what he was agreeing to and that there was a video of his holding people at gun-point on their knees, that he gave a full videoed confession and that he picked up another aggravated assault with a deadly weapon while on bond, he did not want a trial. He felt

that the 20 year agreement was in fact a miracle.  For these reasons,
I believed that his plea was knowingly and voluntarily made.

We took the plea and the judge advised him of his rights, and asked
whether this plea was freely and voluntarily executed and of what his
understanding of the plea was. Everything went smoothly with the
plea. He acknowledged that he would not be able to appeal and that
he wanted to do it this way and not have a trial or continuing fighting.
He was happy I had gotten the offer down from 40 years to 20 and
that he was ready to do this. His sister was so thrilled that we had
gotten it down from the initial offer of 40 years on both, that she
hustled to the front of the courtroom after the plea and shook the
prosecutor's hand and said thank you for going down to 20.

I was saddened to hear these accusations being made that are so
clearly false, but at the same time, I understand that he probably does
not want to be there anymore. I do not like the penalty ranges that are
present in most offenses. I am an extremely big believer in
rehabilitation and I believe that there is a lot of good in every person
if we look closely enough. Prison time is rarely the answer, in my
mind. But saying that, for now, those are not the ideals that are shared
by the legislator. I fought for him and I plead his case in front of the
prosecutor. I made sure the prosecutor knew that this was not another
file; this was Mr. Peterson, a young man that I was going to fight for;
someone I was going to make sure got the best possible outcome. He
felt that he would not fa[re] well at a trial or in front of the judge
because of the evidence stacked so clearly against him. I counseled
with him ten times more than most attorneys would have. I fought for
him, plead with the prosecutor, meet and reviewed the file and the
videos, went to the jail many times to speak with him (jail visitation
records will reflect this as well), and I spoke with his family members
to find out more about him so I could humanize him.

If I could snap my fingers and give him a second chance, I would. But
saying that to say, I followed my obligations to the letter of the law
and did every single thing possible to help him through his
challenging situation. Please let me know if there is any additional
information that I can provide to you.

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 40-44).

The state habeas court found:

27. The Court finds that trial counsel's conduct was not deficient in
any manner, specifically she conducted an adequate investigation into
the facts of the case; determined a number of strategies for defense

and discussed these with the applicant and his family; vigorously plea bargained with the State to obtain a twenty (20) years offer on both cases; properly advised the applicant about his options for resolving the charge in the primary case; and thoroughly explained the Court's admonishments and the plea paperwork to the applicant[.].

28. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

29. The affirmative finding of a deadly weapon in the primary case is proper, given that the applicant was convicted in the primary case pursuant to his plea of guilty to aggravated robbery with a deadly weapon, namely a firearm.

30. In all things, the applicant fails to show that his conviction and sentence were improperly obtained.

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, pp. 55-56).

The state habeas court concluded:

1. In order to obtain relief in a post-conviction writ of habeas corpus for ineffective assistance of counsel, an applicant must prove by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (citing *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).

2. The Supreme Court has held that ineffective assistance of counsel is really when an attorney has provided representation that "amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter,* 131 S. Ct. 770 (2011) (citing *Strickland v. Washington,* 466 U.S. at 690).

3. In order to obtain relief in a post-conviction writ of habeas corpus for ineffective assistance of counsel where the applicant pled guilty, the applicant must prove that but for counsel's error he would not have pled guilty and would have insisted on going to trial. *Ex parte*

*Akhtab,* 901 S.W.2d 488, 490 (Tex. Crim. App. 1995) (citing *Hill v. Lockhart,* 474 U.S 52, 59 (1985)).

4. The applicant fails to demonstrate that counsel's investigation was deficient in any manner or provide any additional evidence that would have been revealed by a more in-depth investigation. *Mooney v. State,* 817 S.W.2d 693 (Tex. Crim. App. 1991).

5. The applicant fails to provide more than conclusory allegations on his claim that Broholm did not work on his case. *Ex parte Empey,* 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

6. The applicant fails to demonstrate that counsel failed to visit him in jail, rushed him to sign plea papers, misadvised him in any manner, or failed to vigorously defend him; and in fact, these claims are directly refuted by the credible evidence in the trial court records and instant habeas proceeding. *Ex parte Richardson,* 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).

7. The applicant fails to show that Broholm's representation fell below an objective standard of reasonable in any manner, or that but for any alleged unprofessional errors the result of the proceeding would have been different. *Mercado v. State,* 615 S.W.2d 225, 228 (Tex. Crim. App. 1981).

8. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel. *Id.*

(Docket Entry No. 9-1, *Ex parte Peterson,* Application No. 81,899-01, pp. 55-58).

This court must afford the state court's factual findings a presumption of correctness, which Peterson has failed to rebut. 28 U.S.C. § 2254(d)(2). Broholm reviewed the evidence against Peterson and advised Peterson against entering a guilty plea. Broholm advised Peterson about the legal options and discussed the advantages and disadvantages of each. Based on her review of the evidence and her knowledge of the law, Broholm told Peterson that he should reject the state's plea offer and request a Pre-sentence Investigation. Fearing a trial and the possibility of a life sentence,

Peterson elected to accept the plea offer of twenty years. Broholm's actions were based on well-informed strategic decisions, and they are well within the range of practical choices not to be second-guessed.

The court now addresses Peterson's other ineffective assistance claims.

### A.     The Failure to Discuss Available Options

Peterson complains that Broholm was eager to enter a plea in Cause Number 137400101010. The record shows that Peterson pleaded guilty to two separate offenses of aggravated robbery with a deadly weapon, in the 232nd Judicial District Court of Harris County, Texas, both for aggravated robbery with a deadly weapon. Cause Number 137400101010 related to an offense on January 14, 2013, and Cause Number 138570801010 related to an offense on April 28, 2013. In the interest of clarity, the court will refer to the conviction in Cause Number 137400101010 as the "Companion Case," and Cause Number 138570801010 as the "Primary Case."

In the instant federal petition, Peterson is only challenging his conviction in the Primary Case. (Docket Entry No. 1, Federal Petition, p. 2). Peterson's claims relating to the Companion Case are DISMISSED without prejudice. The respondent further advises the court that it does not appear that Peterson has filed a separate state application for post-conviction relief challenging the Companion Case; therefore, this claim would most likely be subject to dismissal as unexhausted.

### B.     The Failure to Advise on Eligibility for Probation

Peterson complains that Broholm incorrectly determined that Peterson was eligible for probation. A judge, in the best interest of justice, the public, and the defendant, after conviction or a plea of guilty or nolo contendere, may suspend the imposition of the sentence and place the defendant on community supervision or impose a fine applicable to the offense and place the

defendant on community supervision. TEX. CODE CRIM. PROC. art. 42.12, § 3 (West 2013). The provisions of Section 3 do not apply to a defendant adjudged guilty of an offense under Section 29.03, Penal Code (Aggravated robbery). When in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision. TEX. CODE CRIM. PROC. art. 42.12, § 5(a) (West 2013).

Because Broholm felt strongly about Peterson's case, she urged him to request a Pre-Sentence Investigation and allow the judge to assess punishment. Though there was some risk that the judge could impose a life sentence, Broholm explained that there was a possibility that the judge would impose deferred adjudication in light of Peterson's previous criminal history, age and family support and personality. Broholm pleaded with Peterson to request a Pre-Sentence Investigation and reject the 20-year plea offer.

Given that Peterson was eligible for deferred adjudication, Broholm's advice to request a Pre-sentence Investigation was reasonable. Peterson has not shown that his counsel's actions fell below an objective standard of reasonableness and the ineffective assistance of counsel prejudiced him.

### C.     The Failure to Challenge the Indictment

Peterson next complains that Broholm failed to investigate the facts and failed to discover that the indictment was fatally defective. He argues that the elements of aggravated robbery could not be proven because Peterson only had an unloaded pellet pistol, which was not an actual firearm.

The indictment charged Peterson as follows:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, JAKORIUS PETERSON, hereafter styled the Defendant, heretofore on or about APRIL 28, 2013, did then and there unlawfully, while in the course of committing theft of property owned by ANDREA HERNANDEZ, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY THREATEN ANDREA HERNANDEZ, and the Defendant did then and there use and exhibit a deadly weapon, namely, FIREARM. AGAINST THE PEACE AND DIGNITY OF THE STATE.

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, p. 70).

A person commits the offense of aggravated robbery if, while in the course of committing theft, and with intent to obtain or maintain control over property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon during the commission of the offense. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). A deadly weapon includes anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *Id.* § 1.07(17). A firearm is a device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. *Id.* § 46. 01(a)(3). A firearm is, by definition, a deadly weapon. *Id.* § 1.07(17).

To "use" a deadly weapon during the commission of an offense means that the deadly weapon was employed or utilized in order to achieve its purpose; to "exhibit" a deadly weapon requires only that it be consciously displayed during the commission of the required felony offense. *Patterson v. State,* 769 S.W.2d 938, 940–41 (Tex. Crim. App. 1989); *see McCain v. State,* 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (butcher knife partially concealed in appellant's pocket during attack was deadly weapon used or exhibited in facilitating offense). The law does not require

that the actor commit an overt gesture with the weapon; the mere carrying of a weapon during a robbery can be legally sufficient evidence for a jury to conclude that the intended use of the weapon was that it be capable of causing death or serious bodily injury. *McCain,* 22 S.W.3d at 503.

"[I]n proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon used was capable of causing serious bodily injury or death in its use or intended use." *Adame v. State,* 69 S.W.3d 581, 582 (Tex. Crim. App. 2002). The court held in *Adame* that evidence of whether or not a BB gun used in a convenience store robbery was loaded was not significant to a deadly weapon analysis. *Id.* This principle applies in the instant case because whether the pellet gun was loaded is not relevant to the question of what the pellet gun was capable of doing.

When a defendant enters a plea of "guilty" or "no contest" to a felony offense, Article 1.15 of the Texas Code of Criminal Procedure requires the State to offer evidence of Guilt. TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005). The court's review is limited to a determination of whether the State introduced evidence of guilt "embrac[ing] every essential element of the offense charged." *Stone v. State,* 919 S.W.2d 424, 427 (Tex. Crim. App. 1996); *Chindaphone v. State,* 241 S.W.3d 217, 219 (Tex. App. - Fort Worth 2007, pet. ref'd). A written judicial confession that a deadly weapon was used or exhibited is sufficient to support a deadly weapon finding, regardless of whether additional evidence was presented at trial. *Keller v. State,* 125 S.W.3d 600, 605–06 (Tex. App. - Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted,* 146 S.W.3d 677 (Tex. Crim. App. 2004) (per curiam). The record contains sufficient evidence to demonstrate compliance with Article 1.15 of the Texas Code of Criminal Procedure.

Peterson entered a written judicial confession in which he stated that a deadly weapon was used or exhibited.   This judicial confession is sufficient to support a deadly weapon finding, regardless of whether additional evidence was presented at trial.

Peterson has not satisfied the prejudice prong of *Strickland* based on the deficiencies he alleges in counsel's performance. Peterson has failed to show that there was a reasonable probability that but for Broholm's alleged unprofessional errors, Peterson would not have entered a guilty plea. Peterson received a twenty-year prison term when he pleaded guilty.   Peterson has not shown that he would have insisted on a trial, which exposed him to a prison sentence ranging from five to ninety-nine years.

The state court's decision was a reasonable application of the law to the facts and was not contrary to clearly established federal law as determined by the Supreme Court of the United States. Relief cannot be granted under 28 U.S.C. § 2254(d)(1).

## V.     The Remaining Claims

### A.     The Claim Based on Trial Court Error

In ground two, Peterson complains that the trial court failed to enter a deadly-weapon finding. As noted, the indictment contained a deadly-weapon finding. Peterson entered a guilty plea in which he attested to the truth of the allegations in the indictment.   The judgment contained a deadly-weapon finding.

Peterson's claim finds no support in the record.   Peterson is not entitled to habeas relief on this claim.

**B.    The Claim Based on Insufficient Evidence**

Peterson argues that the evidence was insufficient to support the conviction. The indictment

charged with aggravated robbery by using a firearm. Peterson maintains that he only had an

unloaded pellet pistol, which did not constitute a firearm because it was a not a deadly weapon.

If a defendant understands the charges against him, understands the consequences of a guilty

plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any

concomitant agreement will be upheld on federal review. *Deville v. Whitley,* 21 F.3d 654, 656 (5th

Cir. 1994). Once a voluntary and knowing guilty plea has been entered, all nonjurisdictional defects

in the proceedings that may have occurred earlier are waived, including claims based on challenges

to the sufficiency of the evidence. *United States v. White,* 54 F. App'x 407, 407 (5th Cir. 2002).

Additionally, the state habeas court found:

> 14. The applicant's claim that he used a pellet gun during the
> commission of the primary case and it is not a deadly weapon is a
> challenge to the sufficiency of the evidence, and therefore, not
> cognizable in the instant habeas proceeding. *Ex parte Christian,* 760
> S.W.2d 659, 660 (Tex. Crim. App. 1988).

(Docket Entry No. 9-2, *Ex parte Peterson,* Application No. 81,899-01, p. 51).

"Under Texas law, a prisoner cannot seek habeas review of a sufficiency of the evidence

claim that was available but not raised on direct appeal. *Kittleson v. Dretke,* 426 F.3d 306,317 n.26.

(5th Cir. 2005). Peterson's legal sufficiency-of-the-evidence claim is barred under the doctrine of

procedural default unless Peterson can show that he fits within an exception to that rule.   To

overcome the procedural bar, Peterson must demonstrate "(1) cause for the procedural default and

actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his

claims will result in a fundamental miscarriage of justice." *Smith v. Johnson,* 216 F.3d 521, 524 (5th

Cir. 2000) (quoting *Pitts v. Anderson,* 122 F.3d 275, 279 (5th Cir. 1997)).  Peterson has not made

the requisite showing.  Peterson is not entitled to relief on this claim.

Therefore, Peterson has not established that the state court's denial of relief on this claim was

"contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C.

§ 2254(d)(1); *see also Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).

**VI.    Conclusion**

Respondent's Motion for Summary Judgment, (Docket Entry No. 10), is GRANTED.

Peterson's petition for a writ of habeas corpus is DENIED.  This case is DISMISSED.  Peterson's

motion for evidentiary hearing, (Docket Entry No. 11), is DENIED.  Any remaining pending motions

are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability

is a substantial showing of the denial of a constitutional right.  *Hernandez v. Johnson,* 213 F.3d 243,

248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)).  Under that standard,

an applicant makes a substantial showing when he demonstrates that his application involves issues

that are debatable among jurists of reason, that another court could resolve the issues differently, or

that the issues are suitable enough to deserve encouragement to proceed further.  *See Clark v.*

*Johnson,* 202 F.3d 760, 763 (5th Cir. 2000).  Where a district court has rejected a prisoner's

constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong.  *Slack,* 529 U.S. 484.

This court denies Peterson's petition after careful consideration of the merits of his constitutional claims.  This court denies a COA because Peterson has not made the necessary showing for issuance.  Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on _____JULY 20_____, 2015.

VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE